LAND-LOCK, LLC, a Delaware Limited Liability Company, Defendant Below-Appellant,
v.
PARADISE PROPERTY, LLC, a Delaware Limited Liability Company, Plaintiff Below-Appellee.
No. 384, 2008
Supreme Court of Delaware.
Submitted: October 28, 2008
Decided: December 23, 2008
Before STEELE, Chief Justice, BERGER, and RIDGELY, Justices.

ORDER
HENRY DUPONT RIDGELY, Justice.
This 23rd day of December 2008, it appears to the Court that:
(1) Defendant-Appellant Land-Lock, LLC ("Land-Lock") appeals from the Superior Court's decision denying Land-Lock's motion for summary judgment and the entry of a final judgment in favor of Plaintiff-Appellee Paradise Property, LLC ("Paradise") consistent with that ruling. Land-Lock contends that the court erred in finding that it was not entitled to keep a $100,000 deposit tendered by Paradise upon expiration of the due diligence period. We find no merit in Appellant's argument and affirm.
(2) Land-Lock is a Delaware limited liability company that holds land for development purposes. Paradise is a Delaware limited liability company in the business of land acquisition and development. The dispute between the parties arose out of Paradise's attempt to purchase 132.88 +/- acres of land owned by Land-Lock, located along the Lewes-Georgetown Highway (State Route 9) (the "Property"). Paradise became aware that the Property was for sale through its listing agent, Lingo Real Estate ("Lingo"), and submitted to Lingo a letter of intent to purchase the Property. After receiving feedback from Lingo as to Land-Lock's desired terms of purchase, Paradise submitted a contract proposal.
(3) On July 8, 2005, Paradise and Land-Lock executed a "Contract of Sale for Unimproved Land" (the "Contract") whereby Paradise agreed to purchase the Property for $12,840,000. Paragraph 8 of the Contract mandated a ninety day due diligence period, during which Paradise could cancel the Contract and receive all deposits back from Land-Lock. The purpose of the due diligence period was to allow Paradise the option of entering and inspecting the property before tendering the full purchase price. Paragraph 4 of the Contract required an initial deposit of $25,000 to be made prior to the due diligence period and another deposit of $75,000 to be made after the period. Collectively, these deposits were defined in Paragraph 4B of the Contract as the "First Deposit." After Land-Lock obtained preliminary subdivision plan approval, Paradise was required to pay another deposit of $435,000, defined in Paragraph 4C of the Contract as the "Second Deposit."[1] The First Deposit and Second Deposit were then collectively defined in Paragraph 4C of the Contract as "the Deposits."[2] The Contract also provided that Settlement was to occur fifteen months following the end of due diligence.[3]
(4) In the months after the Contract was signed, issues arose relating to construction of a sewer system for the Property. According to Paragraph 12I of the Contract, Land-Lock was responsible for obtaining approval for a sewer system to serve the Property.[4] Paradise requested evidence of the feasibility and specific plans of the sewer system as required by the Contract, but Land-Lock was unable to provide any definitive evidence. However, based upon Land-Lock's repeated assurances that evidence of the sewer system was forthcoming, Paradise made the two payments constituting the First Deposit. Land-Lock eventually received a Site Selection and Evaluation Report that determined that the Property could support a spray irrigation system, but the speculative nature of the report was not enough for Land-Lock to receive approval of a sewer plan for the Property.
(5) In April 2006, Paradise sent a marketing plan to builders and developers who may have been interested in purchasing the Property. The marketing plan was based upon a Land-Lock site plan dated January 9, 2006, in which the completed Property was shown to include two lakes, a clubhouse, a model home sales center, tennis courts, premium lots on a cul-de-sac at the front of the development, and pedestrian trails. These amenities were thought to enhance the marketability of the Property.
(6) After receiving Paradise's marketing plan, Land-Lock significantly altered its site plan and submitted the altered site plan to the Sussex County Planning and Zoning Commission without notifying Paradise. Paradise contends the changeswhich included eliminating the two lakes, the model home sales center, the pedestrian trails, and the premium cul-de-sac lotsdestroyed its marketing plan and crippled its investment expectations. Land-Lock received preliminary approval for the altered site plan on November 27, 2006.[5]
(7) However, as March 31, 2007the outside contract settlement date approached, Land-Lock had still failed to provide Paradise with a final plan for sewer service as specified in Paragraph 12I of the Contract. Land-Lock's president conceded in his testimony at the arbitration hearing that given the state of the sewer system, final approval would take at least eighteen months after the preliminary plan approval in November 2006, well after the outside settlement date. As a result, on December 4, 2006, Paradise chose not to pay the Second Deposit and terminated the Contract based, in part, upon Land-Lock's failure to provide any information about sewer service to the site. Paradise also demanded return of the $100,000 First Deposit pursuant to Paragraph 12 of the Contract.[6] Land-Lock refused to return the deposit and, on February 20, 2007, Paradise filed a lawsuit against Land-Lock in the Superior Court.
(8) Following discovery, Land-Lock filed a motion for summary judgment arguing: first, that once the due diligence period expired, Paradise was not entitled to a refund of the First Deposit regardless of any post-deposit action; and second, that Paradise wrongfully terminated the contract, and therefore, was not entitled to a return of the First Deposit. On May 29, 2008, the Superior Court denied Land-Lock's motion based on the language of Paragraphs 4, 8, and 12 of the Contract. It started with Paragraph 4C, which defined both the First and Second Deposits collectively, simply as "the Deposits." The court then noted that Paragraph 8, which dealt with the conclusion of due diligence, did not create a situation in which expiration of due diligence would render the First Deposit non-refundable. Finally, the court explained that Paragraph 12 allowed for the return of both deposits if the conditions explained therein were not met. The court also determined that there was an issue of fact regarding whether Land-Lock was in breach. On July 15, 2008, six days before trial was to commence, Land-Lock stipulated to the remaining contested issues of fact and a final judgment and order, dependent on the outcome of this appeal.
(9) Land-Lock contends that the Superior Court erred in determining that the Contract did not entitle Land-Lock to keep the $100,000 First Deposit upon the expiration of the due diligence period. Questions of contract interpretation are questions of law and are reviewed de novo.[7]
(10) Land-Lock asserts that common rules of construction mandate all provisions of a contract be given effect, and, if possible, harmonized.[8] Accordingly, because the words "non-refundable" appear in Paragraph 4 of the Contract, along with language indicating that the $25,000 deposit is to be released from escrow at the end of the due diligence period unless the Contract is terminated, Land-Lock contends that under no circumstances may the First Deposit be refunded after the expiration of the due diligence period. Additionally, Land-Lock contends that the means for a return of the First Deposit is controlled only by Paragraphs 4 and 8 of the Contract, and therefore, the language in Paragraph 12 that refers to "all deposits," refers only to the Second Deposit.[9] Land-Lock further contends that it was not in any breach or default of the Contract, that Paradise waived the right to demand documentation regarding the sufficiency of the sewage system and it is not entitled to the First Deposit as a result of a breach.
(11) In analyzing disputes over the content of a contract, we give priority to the intention of the parties.[10] We start by looking to the four corners of the contract to conclude whether the intent of the parties can be determined from its express language.[11] "In interpreting contract language, clear and unambiguous terms are interpreted according to their ordinary and usual meaning."[12] We will also "construe the agreement as a whole, giving effect to all provisions therein," conscious of the fact that "the meaning which arises from a particular portion of an agreement cannot control the meaning of the entire agreement where such inference runs counter to the agreement's overall scheme or plan."[13] Keeping these rules in mind, we should look to harmonize the entire agreement and remain consistent with the objective intent of the parties that drafted the contract.
(12) Based on the plain language of the Contract, Land-Lock's argument lacks merit. Paragraph 4 defines the First Deposit and the Second Deposit separately; however it then defines the term "the Deposits" as it is to be used in reading the rest of the Contract, as clearly encompassing both the First Deposit and the Second Deposit. Later in the same Paragraph, the Contract indicates that "The Deposits shall be a credit against the Purchase Price and non-refundable to Buyer unless Seller is in default of this Contract, title fails, or a condemnation or casualty event shall occur, in which case the Deposits shall be returned to Buyer with interest accruing thereon starting from the date of such event." A plain reading of this provision indicates that the First Deposit is refundable in the event Land-Lock is in default of the Contract.
(13) Additionally, the language in Paragraph 4 indicating that the $25,000 deposit is to be released from escrow at the end of the due diligence period does not, in itself, indicate that the deposit is thereafter non-refundable. Construing this provision in harmony with Paragraph 4C's definition of "the Deposits," and the rest of the contractual provisions use of the defined term, the plain language of the Contract indicates that the First Deposit is included in "the Deposits" that are refundable in certain instances even after the due diligence period has expired and the funds are released from escrow. Paragraphs 9 and 12, and the Third Amendment parrot the language in Paragraph 4 that the Deposits are refundable in the event the Seller defaults, title fails, or a condemnation or casualty event occurs.
(14) Moreover, Paragraph 8, does not, as Land-Lock contends, provide the exclusive means for the return of the First Deposit. It allows Appellee the right to inspect the property and perform any tests it sees fit, with the option of abandoning the entire sale with no liability and without surrendering any deposit; however, Paragraph 8 does not indicate that the First Deposit is irrevocable if Paradise does not terminate the Contract during the due diligence period. Thus, construing Paragraph 8 in harmony with the rest of the Contract, it provides an avenue for the return of the First Deposit in addition to the means provided in Paragraph 4.
(15) Furthermore, consistent with the definition of the term "the Deposits" in Paragraph 4C, and its express indication that this definition should be applied throughout the Contract to that term, the reference in Paragraph 12 to "all Deposits" includes both the First and Second Deposits. According to that Paragraph, in the event Land-Lock cannot satisfy all contingencies and conditions, Paradise had the option of terminating the Contract, at which time "all Deposits shall be returned...."
(16) Land-Lock does not argue on appeal that it was not in breach of the Contract. Therefore, under the express language of Paragraph 12, Paradise was entitled to the return of both the First and Second Deposit with interest accruing from December 4, 2006, the date Paradise terminated the Contract. Accordingly, the Superior Court properly denied Land-Lock's motion for summary judgment.[14]
NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is AFFIRMED.
NOTES
[1] The Contract originally provided that the Second Deposit was $542,000, but in the Third Amendment To Contract of Sale for Unimproved Land (the "Third Amendment"), executed on January 12, 2006, the parties lowered the purchase price to $10,700,000 and lowered the Second Deposit so that the total of the two deposits remained the equivalent of 5% of the purchase price.
[2] The Third Amendment repeats the definition of "the Deposits" as the First and Second Deposit.
[3] The due diligence period began July 8, 2005 and was scheduled to end October 6, 2005. However, the parties agreed to extend the period in two amendments, one executed October 6, 2005, the second executed October 31, 2005. Thus, the actual end date of the due diligence period was December 31, 2005, putting the outside settlement date at March 31, 2007.
[4] Paragraph 12 of the Contract, entitled "SELLER'S REPRESENTIONS, [sic] WARRANTIES, and COVENANTS," provided, in relevant part, that by the date of Settlement:

I. Seller has received unappealed, Final Plan Approval for the Property, together with all unappealed (with all applicable appeal periods, if any, having expired) permits, licenses, easements, rights-of-way, certificates, exceptions, authorizations, approvals, agreements, changes and other things as may be required to permit the immediate lawful construction, installation maintenance and operation of approximately two hundred fourteen (214) residential building lots, each such lot being at least 10,000 square feet in area, as well as lawful sewer service with capacity immediately available from the applicable authority or agency serving the Property on a permanent basis for the effluent from the Property as intended to service all the lots and amenities....
[5] The Commission's letter did not address the issue of sewage or waste water.
[6] Paragraph 12 provided that:

If on or before the date of Settlement all contingencies and conditions are not or cannot be satisfied by the Seller, Buyer shall have the option of completing the Settlement for the balance of the Purchase Price owed or terminating this Contract, in which case this Contract shall become null and void and all Deposits shall be returned to the Buyer.
[7] Motorola, Inc. v. Amkor Tech., Inc., 958 A.2d 852, 859 (Del. 2008); AT&T v. Lillis, 953 A.2d 241, 251 (Del. 2008).
[8] See Troumouhis v. State, 2006 WL 1579776, at *4 (Del Super. Ct. May 31, 2006)(citing O'Brien v. Progressive Northern Ins. Co., 785 A.2d 281, 287 (Del. 2001); E.I. du Pont de Nemours & Co. v. Shell Oil Co., 498 A.2d 1108, 1113 (Del. 1985)); Roffman v. Wilmington Housing Auth., 179 A.2d 99, 101 (Del. 1962).
[9] Land-Lock argues that Paragraph 12 mandates that if the conditions promised under the paragraph are not met, then Paradise cannot be compelled to settle.
[10] E.I. du Pont de Nemours & Co., 498 A.2d at 1114 (citing Radio Corp. of Am. v. Philadelphia. Storage Battery Co., 6 A.2d 329 (Del. Ch. 1939)).
[11] Nw. Nat'l Ins. Co. v. Esmark, Inc., 672 A.2d 41, 43 (Del. 1996); E.I. du Pont de Nemours & Co., 498 A.2d at 1113.
[12] Lorillard Tobacco Co. v. Am. Legacy Found., 903 A.2d 728, 739 (Del. 2006); Rhone-Poulenc Basic Chem. Co. v. Am. Motorists Ins. Co., 616 A.2d 1192, 1195 (Del. 1992); accord Allied Capital Corp. v. GC-Sun Holdings, L.P., 910 A.2d 1020, 1030 (Del. Ch. 2006).
[13] E.I. du Pont de Nemours & Co., 498 A.2d at 1114.
[14] We note that a trial court's denial of summary judgment is afforded a high degree of deference when it is found that genuine issues of material fact exist. Accord Telxon Corp. v. Meyerson, 802 A.2d 257, 262 (Del. 2002).