# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| ASHLAND LLC, INTERNATIONAL SPECIALTY PRODUCTS INC., ISP ENVIRONMENTAL SERVICES INC., and ISP CHEMCO LLC, | ) ) ) ) ) | |
| Plaintiffs/Counterclaim Defendants, | ) ) ) | |
| v. | ) ) | C.A. No. N15C-10-176 EMD CCLD |
| THE SAMUEL J. HEYMAN 1981 CONTINUING TRUST FOR LAZARUS S. HEYMAN, et al., | ) ) ) ) ) | |
| Defendants/Counterclaim Plaintiffs. | ) ) | |

Submitted: December 15, 2016
Decided: March 29, 2017

*Upon Defendants/Counterclaim Plaintiffs' Motion for Partial Judgment on the Pleadings*
***DENIED***

Christopher Viceconte, Esquire, Gibbons P.C., Wilmington, Delaware, and Michael R. Griffinger, Esquire, William S. Hatfield, Esquire, and Camille V. Otero, Esquire, Gibbons P.C., Newark, New Jersey. *Attorneys for Ashland LLC, International Specialty Products, Inc., ISP Environmental Services, Inc., and ISP Chemco LLC*

Kevin G. Abrams, Esquire, John M. Seaman, Esquire, and April M. Ferraro, Esquire, Abrams & Bayliss LLP, Wilmington, Delaware, and Andrew J. Rossman, Esquire, Jonathan B. Oblak, and Sylvia E. Simson, Esquire, Quinn Emanuel Urquhart & Sullivan, LLP, New York, New York. *Attorneys for The Samiel J. Heyman 1981 Continuing Trust for Lazarus S. Heyman, et al.*

**DAVIS, J.**

This breach of contract case stemming from environmental liability allocation is assigned to the Commercial Complex Litigation Division of this Court. Plaintiffs[1] Ashland LLC, International Specialty Products, Inc. ("ISP"), ISP Environmental Services Inc. ("IES"), and ISP Chemco LLC ("Chemco") filed this declaratory judgment and breach of contract case against

---

[1] Plaintiffs collectively will be called Ashland unless specificity is required. Plaintiff Chemco is a subsidiary of Plaintiff ISP. Plaintiff IES is a subsidiary of Plaintiff Chemco.

Heyman Defendants—The Heyman Seller Defendants, The Heyman Trust Defendants, and Linden Property Holdings LLC ("LPH").[2]

## I. BACKGROUND FACTS[3]

The disputed property (the "Linden Property") is located at 4000 Road to Grasselli, Linden, New Jersey.[4] The Linden Property has a chemical manufacturing history. From 1919 to 1991, non-parties GAF Corporation and GAF Chemicals Corporation owned and operated the Linden Property.[5] GAF Corporation and GAF Chemicals Corporation discovered extensive contamination at the Linden Property during the 1970s-80s.[6] The Heyman Defendants have owned GAF Corporation and GAF Chemicals Corporation since the 1980s.[7]

On June 16, 1989, GAF Chemicals Corporation and the New Jersey Department of Environmental Protection ("NJDEP") entered into an Administrative Consent Order (the "ACO") regarding environmental contamination and cleanup at the Linden Property.[8] The ACO made GAF Chemicals Corporation and "its principals, directors, officers, agents, successors, [and] assignees . . ." responsible for environmental remediation until the NJDEP gave GAF written notice it satisfied the ACO.[9]

In 1991, the Heyman Defendants incorporated ISP as a subsidiary of GAF Chemicals Corporation and incorporated IES as ISP's subsidiary.[10] GAF Chemicals Corporation then

---

[2] The Court is initially using the definitions used by the parties in various pleadings. The Court will use the term "the Heyman Defendants" collectively unless specificity is required—i.e., LPH or alike.

[3] Unless otherwise indicated, the following are the Relevant Facts as alleged in Plaintiffs' First Amended Complaint (the "Complaint"), Defendants' Answer and Counterclaims, and Plaintiffs' Answer. For purposes of the MJP Motion, the Court must view all well-pleaded facts alleged in the Complaint as true and in a light most favorable to Ashland. *See Almah LLC v. Lexington Insurance Company*, 2016 WL 369576, at *4 (Del. Super. Jan. 27, 2016) (citing *Desert Equities, Inc. v. Morgan Stanley Leveraged Equity Fund, II, L.P.*, 624 A.2d 1199, 1205 (Del. 1993)).

[4] Pls.' Compl. ¶ 32.

[5] *Id.* ¶ 33.

[6] *Id.* ¶ 34.

[7] *Id.* ¶ 35.

[8] *Id.* ¶ 37. *See also* Pls.' Compl. Ex. B.

[9] *See* Ex. B. at pp. 18, 22.

[10] Pls.' Compl. ¶¶ 38–39.

2

transferred ownership of the Linden Property to IES.[11] The parties agree that IES became the

entity responsible for the ACO. In 1996, the Heyman Defendants spun off ISP (and IES) from

GAF Chemicals Corporation.[12]

In 2006, Chemco executed an Administrative Consent Order Amendment (the "Amended

ACO") with the NJDEP.[13] The Amended ACO did not replace the ACO. Instead, the Amended

ACO supplemented and became a part of the ACO.[14] The Amended ACO expressly provided

that IES would continue to comply with the terms of the ACO.[15]

### *The Sale and Closing*

In 2011, Ashland acquired ISP, IES, and Chemco from the Heyman Defendants for $3.2

billion.[16] This was done through a Stock Purchase Agreement, dated as of May 31, 2011 (the

"SPA") between the Heyman Defendants (as the "Seller Parties") and Ashland (as the

"Buyer").[17] The Heyman Defendants wanted to retain the Linden Property. So, on August 23,

2011, immediately after the SPA closed, IES conveyed the Linden Property back to the Heyman

Defendants for one dollar.[18] Defendant LPH operates the Linden Property.[19]

The SPA set out the parties' respective obligations regarding the Linden Property. SPA

Section 2(e) to Schedule 5.19 of the SPA[20] states:

---

[11] *Id.* ¶ 40.
[12] *Id.* ¶ 42.
[13] *Id.* ¶ 45. *See also* Pls.' Compl. Ex. C, ¶ 4.
[14] Pls.' Compl. Ex. C at ¶ 9 ("This ACO Amendment is intended to supplement the existing 1989 ACO. The provisions of this ACO Amendment shall become part of the 1989 ACO. The 1989 ACO, as amended, shall remain in full force and effect and [IES] shall continue to comply with the 1989 ACO."). *See also id.* at ¶ 15 ("By the execution of this ACO Amendment, NJDEP does not release any person from any liabilities or obligations such person may have pursuant to any other applicable authority, nor does NJDEP waive any of its rights or remedies pursuant thereto."). *See also* Pls.' Compl. ¶¶ 48–49.
[15] *Id.*
[16] Pls.' Compl. ¶ 51.
[17] *Id.* ¶¶ 51-52.
[18] *Id.* ¶ 60.
[19] *Id.* ¶ 58.
[20] Any further reference to SPA Sections 2 and 4 of Schedule 5.19 of the SPA will omit reference to Schedule 5.19 and will be as "SPA Section 2_" or SPA Section 4_."

In connection with the Linden Transfer, the Seller Parties shall assume all Liabilities to the extent related to or arising from or existing at the Linden Property, including Liabilities arising under or relating to (i) Environmental Laws, provided that such Liabilities shall not include any off-site migration or disposal of Hazardous Materials from the Linden Property prior to the Closing, any claims or damages associated with any off-site migration or disposal of Hazardous Material from the Linden Property prior to the Closing, and for the avoidance of doubt, any off-site contamination of soils, groundwater or sediments, any third party superfund sites including the Newark Bay Complex, any natural resources damages or exposure claims relating to operations or discharges prior to Closing,…or (v) the Linden Transfer (including any Liabilities to the extent arising by virtue of the delivery of a limited warranty deed, but excluding any Liabilities arising out of or relating to fraudulent conveyance or similar liability), in each case, other than as set forth in the proviso in clause (i) above, whether arising before, on or after the Closing Date (the "Linden Excluded Liabilities").[21]

SPA Section 2(f) also discusses the Linden Property transaction—specifically the

"Linden Transfer"[22]—and states:

In connection with the Linden Transfer, the Seller Parties shall be responsible, at their sole cost and expense, for compliance, if applicable, with any requirements of the Industrial Site Recovery Act ("ISRA") and, if ISRA applies to the Linden Transfer, Seller Parties shall (i) within five (5) Business Days after execution of this Agreement, make any required filings or notifications (such as a General Information Notice, as defined under ISRA) to the [NJDEP], and (ii) use reasonable best efforts to, prior to closing, make all other filings, undertake all other measures, including where required undertaking any site investigation or Remedial Action required by ISRA. In addition, the [SPA] Seller Parties shall use reasonable best efforts to amend any consent decree or other binding agreement with any Governmental Entity relating to the Linden Excluded Liabilities, and to replace or substitute any related financial assurance (including any bond or letter of credit), to include the name of the Linden Transferee following the Linden Transfer and, if permitted by NJDEP, to remove the name of ISP or any of the Companies therefrom.[23]

***The Heyman Defendants' "Reasonable Best Efforts"***

On July 18, 2011, prior to closing, IES notified NJDEP of the pending Linden Property

transfer, and advised NJDEP that IES (or any ISP affiliate) would not be associated with the

---

[21] Pls.' Compl. Ex. A, p. 14. (emphasis in original).
[22] The "Linden Transfer" is defined in SPA Section 2(a). *See* Pls.' Compl. Ex. A, p. 14.
[23] *Id.*

4

Linden Property after August 25, 2011.[24] The letter did not advise NJDEP that LPH was required to become an ordered party on the ACO and that IES was to be removed.[25]

LPH performed some affirmative duties under the ACO. It replenished the outstanding letter of credit.[26] It made payments to New Jersey to comply with its portion of the ACO.[27] And, it applied for Remedial Action Permits ("RAPs") for soil and groundwater at the Linden Property.[28] On February 17, 2012, NJDEP issued RAPs for soil and groundwater at the Linden Property to LPH only.[29] IES is not mentioned in either RAP.[30]

On July 3, 2012, LPH's Environmental Compliance manager requested from NJDEP a full satisfaction compliance letter.[31] LPH did not mention IES, ISP, or Chemco in its letter.[32] On December 23, 2013, NJDEP denied LPH's full compliance request.[33] NJDEP's letter specifically required an investigation, ecological risk assessment, and remediation of off-site contamination.[34]

On January 21, 2014, LPH again requested a full satisfaction letter from NJDEP.[35] LPH also mentioned, purportedly for the first time, that IES transferred the Linden Property to LPH, and LPH had taken over on-site responsibilities.[36] LPH also alleged that IES was responsible for any off-site remediation pursuant to the ACO.[37]

---

[24] *Id.* ¶ 62; *see also* Pls.' Compl., Ex. D.
[25] *Id.* ¶ 63.
[26] *See id.* at ¶¶ 62, 64.
[27] *Id.* ¶ 68.
[28] *Id.*
[29] *Id.* ¶ 69 ("The reference site name on that permit and on correspondence from NJDEP forwarding the permit to LPH on that date is 'Linden Property Holdings LLC/Former GAF Chemical Corporation Site.'").
[30] *Id.* ¶ 70.
[31] *Id.* ¶ 74.
[32] *Id.*
[33] *Id.* ¶ 75.
[34] *Id.*
[35] *Id.* ¶ 83.
[36] *Id.*
[37] *Id.*

On February 7, 2014, LPH's in-house counsel advised Ashland that additional remedial work, including an ecological risk assessment, remained.[38] Ashland contends this is the first time the Heyman Defendants advised that off-site work remained. Ashland contends that Heyman Defendants had been aware of the off-site requirements since 2007.[39]

Ashland responded on February 18, 2014.[40] Ashland requested that, pursuant to the SPA, LPH: (i) amend the ACO to add LPH as a party; (ii) obtain NJDEP approval to remove IES from that ACO; (iii) obtain an extension of the statutory deadline to complete remediation investigations; and (iv) complete all work necessary to comply with the ACO.[41] Ashland also requested that, pursuant to the SPA, the Heyman Defendants copy Ashland on all future correspondence and submissions to the NJDEP.[42] The Heyman Defendants did not seek an extension of the statutory deadline to complete work. So, Ashland retained a Licensed Site Remediation Professional ("LSRP").[43] On March 19, 2014, Ashland's LSRP submitted a Remedial Investigation Complete Timeframe Extension Form, and obtained an extension of the statutory deadline to complete remedial work.[44]

On April 9, 2014, LPH again wrote to the NJDEP. LPH argued that it agreed to assume on-site liabilities, while Ashland assumed off-site liabilities pursuant to the ACO.[45] Further, LPH argued that all on-site remediation was complete.[46] On December 18, 2014, the NJDEP informed LPH that: a) its liabilities were not limited to on-site, and b) it was obligated to

---

[38] *Id.* ¶ 85.
[39] *Id.*
[40] *Id.* ¶ 90.
[41] *See id.*
[42] *See id.*
[43] *Id.* ¶ 91.
[44] *Id.* ¶ 126.
[45] *Id.* ¶ 88.
[46] *See id.*

6

complete a remedial investigation pursuant to the Spill Act and N.J.S.A. 58:10B-1.3 as the property owner.[47]

On July 23, 2015, the Office of the Attorney General of New Jersey advised LPH that its $7,744,000 remediation source established in 2011 was solely "a replacement of the [remediation funding source] originally required by the ACO for remediation of the entire site, including remediation of offsite contamination."[48] The Office of the Attorney General advised that the NJDEP was authorized to draw upon the $7,744,000 remediation source to complete remediation of the off-site liabilities.[49] Concurrently, the NJDEP sent Ashland and GAF (and its successors) a Demand for Stipulated Penalties for the parties' collective failure to comply with the ACO.[50]

### The Litigation

Ashland commenced this action on October 20, 2015, and filed its First Amended Complaint (the "Complaint") on December 3, 2015. The Complaint alleges five causes of action relating to purported obligations of the Heyman Defendants in connection with SPA Schedule 5.19 and purported responsibility for the investigation, remediation, and cleanup costs regarding environmental contamination of the Arthur Kill, an off-site location. Count I of the Complaint is a Declaratory Judgment – Breach of Contract claim asserted by Ashland against the Heyman Parties for, among other things, the purported breach of Section 2(f) of Schedule 5.19 of the SPA. Among other things, Count I alleges that the Heyman Defendants' failure to amend the ACO to include the name of LPH and remove ISP and its subsidiaries therefrom is in breach of Section 2(f). The Defendants/Counterclaim Plaintiffs' Motion for Partial Judgment on the Pleadings filed by the Heyman Defendants seeks, under Civil Rule 12(c), judgment on Count I.

---

[47] See id. ¶ 93.
[48] Id. ¶ 94.
[49] Id.
[50] Id. ¶ 109.

On January 6, 2016, the Heyman Defendants filed their Answer to the Complaint and Counterclaims. The Counterclaims assert six causes of action related to the same off-site liabilities associated with the LPH Property. Counts II and III of the Counterclaims are Breach of Contract and Declaratory Judgment – Breach of Contract claims asserted by the SPA Seller Successor Parties and RFH against Ashland in light of Ashland's purported breach of Section 2(e) of Schedule 5.19 of the SPA.

On August 26, 2016, the Heyman Defendants filed their Opening Brief in Support of Defendants/Counterclaim Plaintiffs' Motion for Partial Judgment on the Pleadings (the "MJP Motion").[51] The Heyman Defendants seek judgment on the pleadings on its two Breach of Contract Counterclaims (Counterclaims II and III), and on Ashland's Count I. The Heyman Defendants contend that no discovery is needed for the court to determine the parties' rights and obligations pursuant to Sections 2(e) and 2(f) of the SPA. The sections use mandatory terms like "shall" and "any" to delineate each party's respective post-closing obligations.

On September 19, 2016, Ashland filed its Answering Brief of Plaintiffs/Counterclaim Defendants in Opposition to Motion of Defendants/Counterclaim Plaintiffs for Partial Judgment on the Pleadings (the "MJP Opp."). Ashland argues that Sections 2(e) and 2(f) can be read in conjunction: 2(e) allocates the parties' liability, and 2(f) imposes unequivocal obligations on the Heyman Defendants. Ashland also contends that the MJP Motion must be denied because Ashland alleged there is post-closing discharge from the Linden Property.

The Court heard oral argument on October 4, 2016. At the close of the hearing, the Court took the MJP Motion under advisement. The parties submitted post-trial briefing and sur-replies

---

[51] The Court notes that the parties had already noticed and briefed a Motion to Dismiss and a Motion for Partial Summary Judgment.

8

in November, completing the process on December 15, 2016. This is the Court's decision on the MJP Motion.

## II. STANDARD OF REVIEW—MOTION FOR JUDGMENT ON THE PLEADINGS

A party may move for judgment on the pleadings pursuant to Civil Rule 12(c).[52] In determining Rule 12(c) motion, the Court is required to view the facts pleaded and the inferences to be drawn from such facts in a light most favorable to the non-moving party.[53] The Court must take the well-pleaded facts alleged in the complaint as admitted.[54] The Court also assumes the truthfulness of all well-plead allegations of fact in the complaint.[55] The Court must, therefore, accord a party opposing a Rule 12(c) motion the same benefits as a party defending a motion under Rule 12(b)(6).[56] The Court may grant a motion for judgment on the pleadings only when no material issue of fact exists and the movant is entitled to judgment as a matter of law.[57]

## III. DISCUSSION

Under Delaware law, the Court may interpret an unambiguous contract as a matter of law by giving clear and unambiguous terms their plain and ordinary meaning.[58] The cardinal rule in contract construction is to give effect to all contract provisions.[59] Delaware courts "look to harmonize the entire agreement and remain consistent with the objective intent of the parties that drafted the contract."[60]

---

[52] Super. Ct. Civ. R. 12(c).
[53] *Almah LLC v. Lexington Ins. Co.*, 2016 WL 369576, at *4 (Del. Super. Jan. 27, 2016) (citing *Desert Equities, Inc. v. Morgan Stanley Leveraged Equity Fund, II, L.P.*, 624 A.2d 1199, 1205 (Del. 1993)).
[54] *Id.*
[55] *Id.*
[56] *Id.*
[57] *Id.*
[58] *Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1159 (Del. 2010).
[59] *See, e.g., Martin Marietta Materials, Inc. v. Vulcan Materials Co.*, 68 A.3d 1208, 1221 (Del. 2012).
[60] *Land-Lock, LLC v. Paradise Prop., LLC*, 2008 WL 5344062, at *3 (Del. Super. Dec. 23, 2008).

In harmonizing Sections 2(e) and 2(f), and viewing the facts pleaded and the inferences to be drawn from such facts in a light most favorable to Ashland, the Court finds material issues of fact exist and holds that the Heyman Defendants are not entitled to judgment as a matter of law on Count I of the Complaint or Counterclaims II and III. In fact, at this stage of the proceedings, the Court is not comfortable that there are not ambiguities in the SPA or in the way the parties to this civil action interpret the SPA, including the parties' responsibilities under the ACO.

The Heyman Defendants claim that harmonizing the two Sections requires judgment in their favor.[61] SPA Section 2(e) is rather straightforward. As relevant here, under SPA Section 2(e), the Heyman Defendants (the "Seller Parties") agree to assume all "Liabilities" under applicable "Environmental Law" so long as those liabilities do not include any off-site migration or disposal of "Hazardous Materials" from the Linden Property prior to the Closing. The Heyman Defendants also agreed, under SPA Section 2(e)(v), to assume all "Liabilities" relating to the Linden Transfer whether arising before, on or after the "Closing Date." The "Liabilities" assumed under SPA Section 2(e)(v) are also subject to SPA Section 2(e)(i). Under SPA Section 2(e), therefore, the Heyman Defendants agreed to onsite and post-SPA offsite liabilities and Linden Transfer liabilities subject to SPA Section 2(e)(i). The SPA's plain language reinforces this dichotomy. The Heyman Defendants' liabilities **"shall not"** include **"any"** off-site migration or disposal of Hazardous Materials from the Linden property prior to closing. Delaware Courts define "shall not" as mandatory.[62] Delaware Courts also generally define "any"

---

[61] MJP Mot. at 23.

[62] *See, e.g., Nardo v. Bd. Of Plumbing Exam'rs*, 2001 WL 845663, at *3 (Del. Super. Apr. 17, 2001), *aff'd*, 787 A.2d 101, 2001 WL 1518054 (Del. 2001) (TABLE) (finding that "shall not" is a mandatory requirement in statutory interpretation).

as all-encompassing.[63] The contract allocated pre-closing off-site liabilities to Ashland. The Heyman Defendants assumed all liabilities for the Linden property, except for "off-site migration or disposal of Hazardous Materials from the Linden Property prior to closing."[64]

The Heyman Defendants contend that Section 2(f) only requires them to undertake "reasonable best efforts" to amend "any consent decree of binding agreement with any Governmental Entity" regarding the Linden Property relates purely to the "Linden Excluded Liabilities."[65] SPA Section 2(e) defines "Linden Excluded Liabilities" to include the Linden Property.[66]

Ashland agrees that SPA Sections 2(e) and 2(f) must be read together. However, Ashland contends that reading the two provisions together clearly establishes that the Heyman Defendants would retain liabilities relating to the Linden Property under the ACO.[67]

The Court finds that there are ambiguities regarding the Heyman Defendants' duties and liabilities pursuant to SPA Section 2(f). Read in isolation, the Heyman Defendants' interpretation is plausible. But, SPA Section 2(f) seems to mean more than that. SPA Section 2(f) requires the Heyman Defendants to replace or substitute any related financial assurance relating to consent decrees with Governmental Entities. Moreover, SPA Section 2(f) requires the Heyman Defendants to use reasonable best efforts to (i) include the Linden Transferee (LPH) on any consent decree relating to the Linden Excluded Properties and (ii) remove the name of ISP from any consent decree relating to the Linden Excluded Properties. As the record exists, the ACO appears to be a consent decree with a Governmental Entity (NJDEP). As such, SPA

---

[63] *See, e.g., Prestancia Mgmt. Group, Inc. v. Virginia Heritage Found., II LLC*, 2005 WL 1364616, at *7 (Del. Ch. May 27, 2005).
[64] Pls.' Compl. Ex. A, at 14.
[65] MJP Mot. at 23.
[66] Pls.' Compl. Ex. A, at 14.
[67] MJP Opp. at 21.

11

Section 2(f) can be read to mean that the Heyman Defendants are to take on any financial assurances relating to the ACO, that LPH is to become a liable party on the ACO, and that, if NJDEP would agree, ISP would no longer be a responsible party on the ACO.

Under Delaware law, specific terms of a contract supersede more general terms.[68] SPA Section 2(f) is the more specific provision relating to the Linden Property, the ACO (a consent decree with a Governmental Entity) and who is to undertake what responsibilities with respect to the ACO. As drafted, SPA Section 2(f) does not carve out (as SPA Section 2(e) does) on-site liability and off-site migration liability. Questions arise as to why LPH would agree to be a party to the ACO but think that NJDEP would not look to it for both on-site liability and off-site migration liability, or why the Heyman Parties would replace or substitute related financial assurances but believe the new financial assurance would not be used to address both on-site liability and off-site migration liability.[69]

Moreover, the Heyman Defendants were required to use reasonable best efforts as to the ACO (a consent order with a Governmental Entity (*i.e.*, the NJDEP)). Ashland has pled that the Heyman Defendants did not. This is an issue as to a material fact. Judgment on the pleadings at this point is inappropriate due these types of issues.

---

[68] *See, e.g., DCV Holdings, Inc. v. ConAgra, Inc.*, 889 A.2d 954, 961 (Del. 2005).
[69] These questions seem more troubling when the indemnification provisions are applied to the Heyman Defendants' analysis of SPA Sections 2(e) and 2(f). Under SPA Section 4 (of Schedule 5.19 of the SPA), it appears that the Heyman Defendants expressly agree to indemnify Ashland for any losses Ashland may incur that arise out of the Linden Excluded Liabilities. Pls.' Compl., Ex. A, at 15 (SPA Section 4). However, it also seems that Ashland does not have an express obligation to indemnify the Heyman Defendants or LPH for losses relating to off-site migration liabilities arising under substituted financial assurances under consent decrees with Governmental Entities, or liability LPH may incur as a new party to any existing consent decree with a Governmental Entity. *Id.* This raises additional questions as to how LPH or the Heyman Defendants were to recover from Ashland if NJDEP went against the $7.744 million letter of credit LPH obtained for the remediation of the Linden site or if NJDEP took any direct action against LPH.

12

## IV.    CONCLUSION

The Court **DENIES** the MJP Motion on Counts II and III of the Counterclaims. There remains a controversy about whether the Heyman Defendants performed all of their contractual obligations pursuant to SPA Section 2(f). The Court also **DENIES** the MJP Motion on Count I of the Complaint. Ashland has pled sufficient facts to create genuine issues of fact as to whether the Heyman Defendants complied with SPA Section 2(f) as to the ACO and alike.

**IT IS SO ORDERED.**

_____
Eric M. Davis, Judge

13