**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

MORGAN T. ZURN
VICE CHANCELLOR

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 11400
WILMINGTON, DELAWARE 19801-3734

January 17, 2024

Kevin M. Coen, Esquire
Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street, Suite 1600
Wilmington, DE 19801

Jeffrey J. Lyons, Esquire
Baker & Hostetler LLP
1201 North Market Street, Suite 1407
Wilmington, DE 19801

RE: ***Michael Perik, et al. v. Student Resource Center, LLC, et al.,***
Civil Action No. 2023-0813-MTZ

Dear Counsel:

Plaintiffs Michael Perik, Nichole Rowe Colclasure, John Haseley, and Daniel Jones (together, "Plaintiffs") filed this action for advancement from defendants Student Resource Center, LLC ("SRC") in connection with underlying litigation pending in the United States District Court for the District of Delaware. Plaintiffs seek advancement pursuant to SRC's Amended and Restated Limited Liability Company Agreement (the "2018 Operating Agreement").[1] Perik also seeks advancement from defendant Student Resource Center Holdings, LLC ("SRC Holdings" and together with SRC, "Defendants") under SRC Holdings'

---

[1] Docket item ("D.I.") 13, Ex. A.

operating agreement.[2]  Plaintiffs filed a motion for partial summary judgment.[3]  I

heard oral argument on November 14, 2023.[4]  I write for the parties, who are

familiar with the facts underlying this dispute.

I conclude Defendants have waived any right to invoke the 2018 Operating

Agreement's arbitration provision.  I also conclude the record is insufficiently

developed for me to rule on Plaintiffs' advancement request concerning the

fraudulent inducement, fraudulent concealment, fraud, and conspiracy to commit

fraud claims.  As to the tortious interference and breach of the Unit Purchase

Agreement (the "UPA") claims, Perik's motion is denied, and I enter summary

judgment in Defendants' favor.

**I.     Defendants Have Waived Any Right To Invoke The 2018 Operating Agreement's Arbitration Provision.**

I begin with the gating issue of arbitration.  On November 13, I wrote the

parties requesting their positions on how the 2018 Operating Agreement's

arbitration provision affected these proceedings.[5]  Defendants responded that the

---

[2] D.I. 13, Ex. B.

[3] D.I. 11.

[4] D.I. 35; D.I. 36.

[5] D.I. 31 at 1–2.

claims arising out of the 2018 Operating Agreement should be arbitrated.[6] For their part, Plaintiffs asserted that the arbitration provision is inapplicable, and that Defendants waived the right to wield the provision through their delay in asserting it.[7] I agree Defendants have waived any right to invoke the arbitration provision.[8]

A party to an agreement with an arbitration provision can move to compel arbitration of claims ostensibly falling within the provision's scope.[9] But a party forfeits her right to enforce an arbitration provision "by expressly waiving that right, actively participating in litigation as to an arbitrable claim, or otherwise taking action inconsistent with the right to arbitration."[10] "This rule is in part due to the 'essential purpose of arbitration, which is to provide an alternate dispute resolution mechanism that affords a relatively speedy remedy to the litigants while

---

[6] D.I. 33 at Ltr. 1–2.

[7] D.I. 32.

[8] It is not immediately apparent how SRC Holdings would have a right to invoke that provision.

[9] *See, e.g.*, *Pettinaro Const. Co. v. Harry C. Partridge, Jr., & Sons, Inc.*, 408 A.2d 957 (Del. Ch. 1979).

[10] *Parfi Hldg. AB v. Mirror Image Internet, Inc.*, 842 A.2d 1245, 1260 n.39 (Del. Ch. 2004).

at the same [time] alleviating congestion in the docket of the court system.'"[11] Absent contractual language to the contrary, the Court, rather than an arbitrator, decides whether a party's conduct constitutes such a waiver.[12]

Here, Defendants filed an answer, stipulated to a case schedule, briefed Plaintiffs' motion for summary judgment, filed a motion for leave to file a sur-reply, and filed a sur-reply.[13] This occurred over more than three months. Yet they did not raise the arbitration provision until the Court inquired about it in a letter to counsel, which was sent the day before the hearing on summary judgment. Only then did Defendants take the position that the arbitration provision mandates dismissal.

Defendants' conduct is inconsistent with their right to arbitrate a claim subject to a summary proceeding. "Advancement actions are expedited by nature, and the Court of Chancery strives to resolve them in forty-five to ninety days so that the advancement right—if it exists—can fund the underlying litigation."[14]

---

[11] *Menn v. Conmed Corp.*, 2019 WL 925848, at *2 (Del. Ch. Feb. 25, 2019) (alteration in original) (quoting *Dorsey v. Nationwide Gen. Ins. Co.*, 1989 WL 102493, at *2 (Del. Ch. Sept. 8, 1989)).

[12] *See Gandhi-Kapoor v. Hone Cap. LLC*, -- A.3d --, 2023 WL 8480970, at *19 (Del. Ch. Nov. 22, 2023).

[13] D.I. 8; D.I. 10; D.I. 15; D.I. 20; D.I. 27.

[14] *Gandhi-Kapoor*, 2023 WL 8480970, at *21.

Such actions are often resolved on motions for summary judgment.[15] It follows that raising an arbitration provision on the eve of an advancement summary judgment hearing represents a significant delay relative to the proceedings. Further, dismissing this case in favor of arbitration is contrary to the underlying policy of affording litigants a speedy remedy and would not alleviate docket congestion.[16] I conclude Defendants waived any right to invoke the 2018 Operating Agreement's arbitration provision.

## II. Fraud Claims

I next turn to Plaintiffs' request for advancement, as officers under Article XI of the 2018 Operating Agreement, concerning the fraudulent inducement, fraudulent concealment, fraud, and conspiracy to commit fraud claims. As the inquiry into that request unfolded over briefing and at argument, it became apparent that Plaintiffs did not address the universe of instruments that potentially

---

[15] *See id.* ("Advancement proceedings are summary and expedited. Parties do not typically take discovery, and the court generally resolves the case as a matter of law."); *accord Senior Tour Players 207 Mgmt. Co. LLC v. Golftown 207 Hldg. Co., LLC*, 853 A.2d 124, 126–27 (Del. Ch. 2004) ("Summary judgment is an appropriate way to resolve advancement disputes because 'the relevant question turns on the application of the terms of the corporate instruments setting forth the purported right to advancement and the pleadings in the proceedings for which advancement is sought.'" (quoting *Weinstock v. Lazard Debt Recovery GP*, 2003 WL 21843254, at *2 (Del. Ch. Aug. 1, 2003)).

[16] *See Dorsey v. Nationwide Gen. Ins. Co.*, 1989 WL 102493, at *2 (Del. Ch. Sept. 8, 1989) (discussing underlying policy interests).

affect their rights. In particular, the 2018 Operating Agreement was amended and restated in a way that might eliminate Plaintiffs' advancement rights.[17] Plaintiffs did not address this amendment, and neither party briefed its significance. I cannot conclude Plaintiffs are entitled to a summary judgment.

This Court will grant a motion for summary judgment where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."[18] In deciding a motion for summary judgment, the facts must be viewed in the light most favorable to the nonmoving party, and the moving party has the burden of demonstrating that no material question of fact exists.[19]

Delaware follows the objective theory of contracts, meaning "a contract's construction should be that which would be understood by an objective, reasonable third party."[20] Delaware courts interpret contracts with the goal of effectuating the

---

[17] D.I. 33, Ex. 3 [hereinafter "2021 Op. Agr."].

[18] Ct. Ch. R. 56(c).

[19] *Weil v. VEREIT Operating P'ship, L.P.*, 2018 WL 834428, at *3 (Del. Ch. Feb. 13, 2018) (citing *Gary v. Beazer Homes USA, Inc.*, 2008 WL 2510635, at *3 (Del. Ch. June 11, 2008)).

[20] *Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1159 (Del. 2010) (internal quotation marks omitted) (quoting *NBC Universal v. Paxson Commc'ns*, 2005 WL 1038997, at *5 (Del. Ch. Apr. 29, 2005)).

parties' intent.[21]  "When a contract is clear and unambiguous, the court will give effect to the plain meaning of the contract's terms and provisions."[22]  The Court "will read a contract as a whole and we will give each provision and term effect, so as not to render any part of the contract mere surplusage."[23]

Plaintiffs' rights under the 2018 Operating Agreement vested at the time of their service as officers.[24]  Plaintiffs seek advancement for fraud claims based on acts or omissions in the months before the UPA's closing.[25]  An amendment to the 2018 Operating Agreement around the time of that closing may have altered Plaintiffs' vested advancement rights for those claims—if it complied with Section 11.6.  That section reads:

---

[21] *Lorillard Tobacco Co. v. Am. Legacy Found.*, 903 A.2d 728, 739 (Del. 2006).

[22] *Manti Hldgs., LLC v. Authentix Acq. Co., Inc.*, 261 A.3d 1199, 1208 (Del. 2021) (internal quotation marks omitted) (quoting *Osborn*, 991 A.2d at 1159–60).

[23] *See Osborn*, 991 A.2d at 1159 (internal quotation marks omitted) (quoting *Kuhn Construction, Inc. v. Diamond State Port Corp.*, 2010 WL 779992, *2 (Del. Mar. 8, 2010).

[24] S*ee Marino v. Patriot Rail Co.*, 131 A.3d 325, 341 (Del. Ch. 2016); D.I. 1, Ex. A §§ 11.1, 11.6 [hereinafter "2018 Op. Agr."].

[25] D.I. 15 at Aff., Ex. 1.

> The provisions of this <u>Article XI</u> may be amended or repealed in accordance with Article IX; <u>provided, however</u> that no amendment or repeal of such provisions that adversely affects the rights of any Indemnified Person under this <u>Article XI</u> with respect to its acts or omissions at any time prior to such amendment or repeal shall apply to any Indemnified Person without its prior consent.

Section 11.6 of the 2018 Operating Agreement provides that once the acts or omissions giving rise to a claim against Plaintiffs occurred, Plaintiffs' rights to advancement or indemnification cannot be altered for claims concerning those acts or omissions without their prior consent.[26] The first clause, which I will refer to as the "Amendment Clause," allows amendment or repeal of the operating agreement's provision of advancement rights. The Amendment Clause requires that any such amendment comply with Article IX of the 2018 Operating Agreement. Article IX provides the agreement "may be modified or amended only with the prior written consent of the holders of a majority of the outstanding Units voting together as a single class."[27]

The Amendment Clause is qualified by a proviso. This proviso provides that any amendment made pursuant to the Amendment Clause requires the director's or

---

[26] 2018 Op. Agr. § 11.6.

[27] *Id.* § 9.1.

officer's consent before it can affect her vested advancement rights for acts or omissions that took place before any such amendment.

The day the UPA closed, SRC and SRC Holdings entered into SRC's Second and Restated Limited Liability Company Agreement (the "2021 Operating Agreement").[28] Its preliminary statement provides that it "amends and restates the [2018] Operating Agreement] in its entirety."[29] It also includes a merger clause.[30] Through this language, the parties indicated that the 2021 Operating Agreement replaced and superseded the 2018 Operating Agreement.[31] The parties do not dispute that Article IX was followed in executing the 2021 Operating Agreement.

The 2021 Operating Agreement differs significantly from the 2018 Operating Agreement and includes no reference to officer advancement rights. I read this omission as eliminating the officers' advancement rights. For the 2021 Operating Agreement to eliminate Plaintiffs' advancement rights for claims based

---

[28] 2021 Op. Agr. at preamble.

[29] *Id.* at prelim. statement.

[30] *Id.* § 9.1 ("This Agreement contains the complete agreement of the Member concerning its subject matter, and it supersedes any earlier agreements among them, whether written or oral, concerning its subject matter.").

[31] *See Focus Fin. P'rs, LLC v. Holsopple*, 241 A.3d 784, 822–23 (Del. Ch. 2020).

on acts or occurrences before that agreement, it must comport with Section 11.6's proviso: Plaintiffs must have given their "prior consent."[32]

The parties did not address the proviso in briefing. They did not brief the meaning of "prior consent," nor did they brief the extent to which this standard might differ from the common law waiver standard.[33] I cannot determine whether Plaintiffs gave their "prior consent" to amend the 2018 Operating Agreement and eliminate their advancement rights based on the parties' submissions. Because this issue may be dispositive, I decline to enter a summary judgment.[34]

Plaintiffs also request advancement for fraud claims concerning allegedly false representations and warranties in the UPA. The relevant acts or omissions occurred at the UPA's closing.[35] If the 2021 Operating Agreement was executed

---

[32] 2018 Op. Agr. § 11.6.

[33] Indeed, no party meaningfully addressed the 2021 Operating Agreement until the hearing on Plaintiffs' motion.

[34] *See Gerald N. & Myrna M. Smernoff Rev. Trs. v. King's Grant Condo. Assn.*, 2022 WL 6331860, at \*1 (Del. Ch. Oct. 10, 2022) ("[T]here is no . . . absolute right to summary judgement, [sic] and it is within the discretion of the presiding judicial officer to require a developed record before rendering a decision on the merits." (footnote omitted)).

[35] *See Kilcullen v. Spectro Sci., Inc.*, 2019 WL 3074569, at \*7 (Del. Ch. July 15, 2019) ("Where a fraud claim alleges false representations and warranties in a purchase agreement, the fraud claim accrues at closing."); *see also ISN Software Corp. v. Richards, Layton & Finger, P.A.*, 226 A.3d 727, 732 (Del. 2020) ("Delaware is an 'occurrence rule' jurisdiction, meaning a cause of action accrues 'at the time of the wrongful act . . . .'" (quoting *Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*, 860 A.2d 312, 319 (Del. 2004))).

simultaneously with the UPA's closing, it may have revoked Plaintiffs' advancement rights for those claims. The parties dispute when the 2021 Operating Agreement was executed and did not brief whether the UPA provides that it was executed simultaneously with the UPA's closing.[36] Even if the 2021 Operating Agreement became effective after closing, a showing that Plaintiffs gave prior consent to limit their advancement rights in accordance with Section 11.6 would be dispositive. As with the pre-closing fraud claims, I cannot resolve whether the 2021 Operating Agreement repealed Plaintiffs' advancement rights.[37]

Rather than focus on the 2018 Operating Agreement or the effect of the 2021 Operating Agreement, Defendants argued Plaintiffs waived their advancement rights through Section 6.1(d) of the UPA. I will address that argument, assuming arguendo that Plaintiffs had advancement and indemnification rights when the

---

[36] At the hearing, Plaintiffs argued that the amendment must have occurred after closing because SRC Holdings executed the amendment, and it did not hold the interests necessary to do so until closing was completed. D.I. 39 at 4–8. While this appears correct as a factual matter, the issue was not briefed. Nor did the parties brief whether the amendment could be deemed to have occurred simultaneously with closing. *See, e.g.*, D.I. 15 at Aff., Ex. 1 § 2.1. The Court will defer resolution of this question until the parties have the opportunity to fully present it.

[37] *See King's Grant Condo. Assn.*, 2022 WL 6331860, at *1.

UPA closed. A covered person can waive her contractual advancement rights.[38]

"The Delaware Supreme Court has held that waiver has three elements: '(1) there is a requirement or condition to be waived, (2) the waiving party must know of the requirement or condition, and (3) the waiving party must intend to waive that requirement or condition.'"[39] Delaware courts have required contractual waivers to be "clear and unequivocal."[40]

---

[38] *See Kokorich v. Momentus Inc.*, 2023 WL 3454190, at *10 (Del. Ch. May 15, 2023), *aff'd*, 2023 WL 8276361 (Del. Nov. 30, 2023).

[39] *Javice v. JPMorgan Chase Bank*, 2023 WL 4561017, at *4 (Del. Ch. July 13, 2023) (quoting *AeroGlobal Cap. Mgmt., LLC v. Cirrus Indus., Inc.*, 871 A.2d 428, 444 (Del. 2005)).

[40] *Id.*

Section 6.1(d) of the UPA reads:

> Notwithstanding anything to the contrary, no [current or former SRC director or officer] shall have any rights with respect to indemnification, exculpation, advancement, contribution or recovery of any kind from Purchaser or [SRC] or any of their respective Affiliates or Subsidiaries for any matter which (i) is a claim in connection with or arising under this Agreement or any other document, certificate or agreement referenced herein or executed or delivered in connection with the transactions contemplated by this Agreement or (ii) such [current or former SRC director or officer] may be liable to Purchaser or [SRC] or their respective Affiliates or Subsidiaries for Fraud based on the representations and warranties contained in this Agreement (including the costs and expenses of defending any claims with respect to such matter) or any other document, certificate or agreement referenced in this Agreement or executed or delivered in connection with the consummation of the transactions contemplated by this Agreement.

Only some of those covered persons signed the UPA, and most that did signed on behalf of an entity.[41] It follows that some covered persons did not manifest the requisite intent to waive their rights through Section 6.1(d), making Section 6.1(d) at least partially unenforceable as a waiver. It is unreasonable to interpret Section 6.1(d) as a waiver when it is not enforceable as one.[42]

---

[41] D.I. 36 at 66–67. And SRC could not waive Plaintiffs' rights on their behalf through this language. *See Javice*, 2023 WL 4561017, at *2 ("[C]ontracting parties may not unilaterally eliminate vested rights of third parties.").

[42] *Ashland LLC v. Samuel J. Heyman 1981 Continuing Tr. for Heyman*, 2017 WL 1191099, at *5 (Del. Super. Ct. Mar. 29, 2017) ("The cardinal rule in contract construction is to give effect to all contract provisions. Delaware courts 'look to harmonize the entire agreement and remain consistent with the objective intent of the

A better reading provides the parties intended to effectuate Section 6.1(d) by amending the 2018 Operating Agreement. As explained, such an amendment can retroactively eliminate the directors' and officers' advancement rights so long as those individuals give prior consent. Perhaps the 2021 Operating Agreement was intended to effectuate Section 6.1(d) by retroactively eliminating director and officer advancement rights, so long as they gave prior consent. Perhaps it was not. As explained, I cannot resolve that today.

## III. Post-Termination Claims

Finally, Perik seeks advancement in connection with tortious interference and breach of contract claims concerning his conduct after the UPA closed. Counts V and VI of the underlying complaint allege Perik made disparaging comments about Defendants and their affiliates and that he worked with one of SRC's business partners to establish a competing business, among other things. He seeks advancement under SRC Holdings' Amended and Restated Limited Liability Company Agreement (the "Holdings Operating Agreement").

---

parties that drafted the contract.'" (footnote omitted) (quoting *Land–Lock, LLC v. Paradise Prop., LLC*, 2008 WL 5344062, at *3 (Del. Super. Dec. 23, 2008))).

In their sur-reply, Defendants made an additional argument based on Section 6.4. D.I. 27 at 2. They waived this argument by failing to raise it in their answering brief.

Section 5.5(e) of the Holdings Operating Agreement provides for advancement "for action taken or omitted to be taken on behalf of [SRC Holdings] or in connection with any involvement with [SRC Holdings] or its Subsidiaries."[43] Because no party has offered an interpretation of Section 5.5(e) that varies from the "by reason of the fact" standard in 8 *Del. C.* § 145, I find Section 145 precedent helpful here.[44] In that context, our courts have found that expenses are incurred by reason of the fact one is a director or officer "if there is a nexus or causal connection between any of the underlying proceedings . . . and one's official corporate capacity."[45] "That link is shown 'if the corporate powers were used or necessary for the commission of the alleged misconduct.'"[46] Additionally, if the claims at issue require one to defend her conduct as a director or officer, the claims are brought by reason of that person's corporate status.[47]

---

*Emerald P'rs v. Berlin*, 726 A.2d 1215, 1224 (Del. 1999) ("Issues not briefed are deemed waived.").

[43] D.I. 13, Ex. B § 5.5(e).

[44] *See Fillip v. Centerstone Linen Servs.*, 2013 WL 6671663, at *7–8 (Del. Ch. Dec. 11, 2013).

[45] *Homestore, Inc. v. Tafeen*, 888 A.2d 204, 214 (Del. 2005).

[46] *Evans v. Avande, Inc.*, 2022 WL 2092126, at *4 (Del. Ch. June 9, 2022) (quoting *Bernstein v. TractManager, Inc.*, 953 A.2d 1003, 1011 (Del. Ch. 2007)).

[47] *Mooney v. Echo Therapeutics, Inc.*, 2015 WL 3413272, at *10–11 (Del. Ch. May 28, 2015).

Perik makes two arguments in support of his position that these claims relate to his status as an SRC Holdings director. First, he argues that because he was a director at the time of the alleged wrongdoing, the claims were necessarily brought for acts taken in his capacity as a director. But none of the claims at issue involve the exercise of Perik's power as a director. Nor do they require him to defend his conduct as a director. As pled in the Delaware federal action, and as presented to this Court, these claims have no relationship to Perik's service as a director. Perik's argument essentially reads out the nexus requirement in favor of a broad rule requiring advancement for all actions covered persons took in any capacity while, and only because, they served in a covered capacity.

Second, Perik argues that the claims relate to his actions as a director because the Delaware federal complaint alleges that he did not return confidential company information after his termination. This argument draws on a line of cases concluding claims premised on post-termination conduct triggered advancement or indemnification rights because they involved the misuse of confidential information that the director or officer obtained in that role.[48] But those cases demonstrate the claims must concern confidential information obtained through

---

[48] *See, e.g.*, *Ephrat v. MedCPU, Inc.*, 2019 WL 2613281 (Del. Ch. June 26, 2019).

their service as a director or officer. *Ephrat v. MedCPU*, on which Perik relies, explains that certain claims did not "warrant advancement because they do not rely on allegations that Petitioners misused or misappropriated information they learned by reason of the fact of their service to [the company], and allege no other nexus or causal connection to that service."[49]

So too here. The allegations in the underlying complaint concerning Perik's alleged failure to return company information do not inform these tortious interference and breach of contract claims. Put the other way, the claim for tortious interference does not rely on the allegations that Perik did not return SRC Holdings' confidential information. It also does not appear that Perik obtained the relevant information by reason of the fact he was an SRC Holdings director. The allegations concerning company information do not push Counts V and VI within the scope of Perik's advancement rights.

Perik's motion for summary judgment on this point is denied. Summary judgment is entered in Defendants' favor on this issue.[50]

---

[49] *Id.* at *8.

[50] *Bank of Del. v. Claymont Fire Co. No. 1*, 528 A.2d 1196, 1199 (Del. 1987) ("When a party moves for summary judgment under Chancery Court Rule 56, and the court concludes that the moving party is not entitled to summary judgment, and the state of the record is such that the nonmoving party clearly is entitled to such relief, the judge may

### IV.    Conclusion

Plaintiffs' motion for summary judgment is denied.  Summary judgment is entered in Defendants' favor on Perik's claim for advancement based on his post-termination conduct.

Sincerely,

*/s/ Morgan T. Zurn*

Vice Chancellor

MTZ/ms

cc:  All Counsel of Record, via *File & ServeXpress*

---

grant final judgment in favor of the nonmoving party.  The form of the pleadings should not place a limitation upon the court's ability to do justice.").

Defendants also seek fee shifting in connection with this action.  Section 10.11 of the 2021 Operating Agreement provides the prevailing party "[i]n any action or proceeding brought to enforce any provision of" the agreement "shall be entitled to recover reasonable attorneys' fees and expenses from the non-prevailing party in addition to any other available remedy."  2021 Op. Agr. § 10.11.  I will address the issue of prevailing party fee shifting at the conclusion of this action.